## GLOBE–WERNICKE CO. v. ACME CARD SYSTEM CO.

Circuit Court of Appeals, Seventh Circuit. December 28, 1928.

Rehearing Denied April 11, 1929.

No. 4030.

Victor D. Borst, of New York City, for appellant.

George I. Haight, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Appellee, Acme Card System Company, charged appellant, the Globe-Wernicke Company, with infringement of United States letters patent No. 1,327,936, issued to Anthony, January 13, 1920, relying on claims 2, 3, 12, 19, and 23, all of which were found valid and infringed.

The patent is for a card index, of a class known as a visible overlapping card index. Claim 2 reads:

"2. In a card index, the combination with a holder having opposed guides, of a plurality of card carriers extending from one guide to the other and slidably mounted therein, each carrier being formed of a length of resilient wire and a card detachably sustained on each carrier, each carrier being provided with means for holding it spaced from an adjacent carrier whereby the lower edge of each card projects below the card above."

Claim 3 differs from claim 2 only in the use of the words "removably hinged to" instead of "detachably sustained on," and claim 19 differs from claim 2 only in the use of the words "of resilient material" in place of "of a length of resilient wire."

Claims 12 and 23 read:

"12. In a card system, a sheet, and a support therefor to which the sheet is detachably hinged, comprising a pair of spacers at the lateral edges of the sheet."

"23. In a card index and in combination a frame, a series of supporting members held therein, each having a card engaging and supporting part and a spacing part for spacing the supporting parts of the members a distance from the corresponding parts of the adjacent members, said members being individually removable from the frame without substantial movement lengthwise of the frame, and a card removably sustained by each supporting part, said cards being of substantially uniform width in a direction transverse of the supporting part, whereby when all of the cards are in place marginal edges substantially uniform in width of all of the cards back of the uppermost card will be exposed, and when an intermediate card is missing from its supporting member occupying its place in the frame the absence of said card will be visually indicated by the exposure of an additional portion of the marginal edge of the next lower card."

The defenses were invalidity of the claims relied on and noninfringement.

Although visible record-keeping equipment has only recently come into wide commercial use, the art is by no means young, as appears from the references in the record in this case. Such equipment is designed to expedite and facilitate the use of cards bearing information or employed as records by having a portion or all of each card in the series visible, and for this purpose the cards are mounted in trays or frames. The advantage in accessibility for reference over the common vertical file of cards, in which all the cards stand on edge and are wholly concealed, is obvious.

In some types of visible card indexes, where the information borne by each card is limited, the entire face of the card may be exposed. This type is exemplified by the directory found in the lobby of an office building. Indexes of that type are not here involved.

In a visible overlapping card index only a margin of each card, bearing a distinguishing legend for reference, is visible; the greater portion of the face of the card being concealed by the cards above it which overlap. Thus, if the record is a series of customers' accounts, only the name, and perhaps address, of each customer appears; the entries being hidden by the overlapping cards. Obviously, ready access to the normally concealed portion of the card is necessary, and this requirement is accomplished by mounting each so that when an entry is to be made on one card all those above it may be turned upwardly. Thus the back surface of any card may also be used, and access to it had by turning it, and necessarily the cards above it, upwardly and over. The width of the exposed margin of a card is determined by the distance between the mountings upon which the cards are suspended in the frame or tray. That the cards may be inserted in a typewriter for entries or taken from the file for reference, they are made detachable from the index frame.

The Anthony patent, infringement of which was found by the District Court, was applied for in October, 1913, and issued in 1920. It discloses a frame or tray of sheet metal with narrow flanges on both sides of the tray, each flange being bent to form a longitudinal channel or guide on the inside of the tray wall. The card-supporting member, called a carrier, is made of a length of resilient wire, each end of which is formed into a loop which serves, when inserted in the guide, to space the carrier of which it is part from the carrier adjacent to it in the tray. This spacing determines the width of the card margin exposed. The carrier, being resilient, can be inserted in the frame merely by springing it to shorten the distance between the looped ends, which can then be slipped into the guides. The card is threaded on the wire carrier, being folded and having apertures cut along the fold to permit this threading, but obviously this can only be done when the carrier is removed from the frame. The president of appellee testified that his company, which owns this patent, has never made card indexes in which the card was threaded

on the carrier by means of holes in the card itself.

The card index made and sold by appellee was before the court. It too has sheet metal trays with longitudinal guides in which carriers, formed of resilient wire, can be placed by merely flexing the wire. The wire carriers, however, instead of ending in closed loops, as in Anthony, are bent in half loops, and the short return portions, parallel to, but offset slightly above the carriers themselves, terminate in free ends upon which the cards are hung by means of two small metal hinge-members fastened to the upper edge of each card, one near each side. By varying the location of the hinge-members, several cards may be hung on one carrier. The cards are thus made removable from the carrier without removal of the carrier from the tray. It is apparent that this commercial index of appellee is the embodiment of United States patent No. 1,153,520, to Rosenberger (1915), issued during the pendency of the Anthony application and after interference with it. This patent is also owned by appellee.

The card index made by appellant and found to infringe the Anthony patent is likewise made up of a series of card-supporting members, or carriers, held in a tray by opposed guides which form the sides of the tray. The carriers are formed from strips of sheet metal, the ends of which are turned over to prevent overlapping of the thin carriers which abut, edge to edge, their entire length, thus spacing the card mountings and providing the exposed card margins. On the upper edge of each carrier, and integral with it, two tongues of metal, one near each end, are turned over to grip a wire which runs almost the length of the carrier and forms a pintle upon which swings another strip of metal formed with two channels, one overlapping the other, permitting a card, one edge of which is folded over to form a narrow flange, to be slipped between and held by the two overlapping channels. The card can thus be inserted or removed without removal of the carrier from the tray. To position the carrier, it is first placed in the tray in a diagonal position, then swung until it lies transverse to the tray, when one of its ends is held under each of the opposing guides. When the desired carriers are in the tray, they are crowded together and locking means employed to prevent them from getting into a diagonal position and thus being freed from the guides by which they are retained. This structure is the embodiment of United States patent No. 1,503,559, to Ringler (1924).

The features which make these indexes useful and valuable equipment, and which are possessed by both appellee's commercial structure and appellant's device, are, in brief: The freedom with which the cards swing and permit the whole series above a determined card to be flipped over; the ease with which any carrier may be inserted or removed from between any two in the series—the system being thus kept in perfect numerical, alphabetical, or any desired order, and expanded or contracted to suit the varying needs of the business; and the ready removability of any card from its carrier while the carrier remains in the tray, such removal disclosing, by the resultant doubled margin, that a card is missing—an advantage in insuring the return of the cards to their proper places and in reducing the time of replacement. This last feature has been called the "tell-tale" feature.

This so-called "tell-tale," arising from the removability of the card from the carrier while the latter remains in the tray, was by the District Court ascribed to Anthony and emphasized as one of the novel features of his invention. The Anthony patent, however, discloses a carrier which must be removed from the tray or frame before the card can be removed from the carrier; and the concluding clause in claim 23, relied on as a disclosure of the "tell-tale" feature, is merely a statement of what may be done with the index if operated in a specific manner, and the statement is no more true of Anthony than of Rand, Seaton, or Mapes (earlier patents discussed below), in that the double margin will appear only if the carrier is replaced in the frame after the card has been removed from the carrier, or, where the card is not detachable, some block or strip of proper size is inserted when the carrier is removed.

This appeal is not to be determined by the conclusion that appellee's commercial device is not that of the Anthony patent, or that the Anthony patent does not disclose all that is found in appellant's index. There remain the questions: What did Anthony actually invent? And, does appellant's device read upon the claims of the Anthony patent properly interpreted? To answer the first of these questions it is necessary to refer briefly to the prior art.

The earliest reference to visible overlapping card indexes in the record before us is United States patent No. 163,267, to Seaton (1875). Seaton had a tray in which he arranged a series of small blocks, to each of which was affixed a uniform card projecting some distance below the block, a margin of each card as wide as the block being thus ex-

posed. This device was subject to the objections that repeated flexing would weaken the card, and when the cards were removed from the tray they would be cumbersome to handle because of the attached blocks.

In 1901 United States patent No. 685,071 was issued to Wakefield for a "Card Catalogue," consisting of a cabinet in which were a number of removable shallow drawers. In each drawer were a number of channel shaped metal trays approximately as wide as the cards to be used, each side of the tray being perforated with a series of equally spaced holes. The card for this index was specially cut with a pair of projecting lugs at one edge, or provided with lugs by crimping a piece of sheet metal, slightly longer than the width of the card, over the edge. The card could be sprung and the lugs inserted in the holes in the sides of the tray. The trays were shown with perforations to accommodate ten cards, but the patent specified that the number could be varied. The distance from center to center of adjacent perforations fixed the width of card margin exposed.

In 1906 British patents No. 12,475 and No. 12,476 were issued to Mapes for "Mounting for Reference Cards" and "Filing Cabinets." The latter patent was for a cabinet containing a series of drawers or trays designed to receive index cards mounted on holders patented in No. 12,475. The trays—of sheet metal in 12,476 and of wood in 12,-475—had sides longitudinally recessed or grooved on the inside to receive the card holders. These holders were tubes of metal, or other suitable material, of such length as to be retained by the grooves when placed transverse to the tray, with a longitudinal slit into which the edge of a card might be slipped, there to be held by the resiliency of the tube. By placing the tube diagonally in the tray and turning it transverse to the tray, the ends of the tube, which project slightly beyond the card, fit into the grooves in the sides of the tray and are so held. In this position the card could be turned upwardly, the ends of the tube turning in the grooves. After all the cards are so placed in the tray, the holders are crowded together and kept in their transverse position by a wedge, the width of card margin exposed being determined by the diameter of the tubes used as card holders.

In 1912 United States patent No. 1,016,-230 was issued to Rand for an "Adjustable Card Index." The Rand index was a sheet metal tray or frame with flanged sides for receiving cardboard strips to which cards were affixed by fabric hinges, the width of these strips fixing the exposed card margin.

One of the flanges of the tray was wider than the other, and in the deep channel thus formed was lodged a yielding follower strip which was pressed by a spring against one end of each card-supporting strip. It was intended that the card-supporting strips should be inserted by pushing one end into this channel as far as necessary to permit the other end to clear the narrow flange, beneath which it would be forced by the spring-pressed follower strip; but this construction was modified early in 1913, as shown by physical exhibits introduced in evidence, and the follower strip eliminated; insertion and removal of the card-supporting strips being accomplished by springing the flexible strips much as the wire carrier in Anthony is sprung for insertion or removal.

It is clear from these references that Anthony worked in a crowded art. He did not disclose the idea of visible removable record cards, as every reference here described dealt with that broad subject. Nor was his the first combination in which the cards could be removed from their carriers, as both Mapes and Wakefield had detachable cards. The modified Rand index, which used the same card-supporting strip as his patent, with attached card, permitted the carrier to be plucked from its position in the frame and as easily replaced without the displacement of any other carrier or the employment of any such locking device as Mapes and appellant employ. In Seaton, Mapes, and Rand, as well as Anthony, the carrier serves as a spacer.

It is not suggested, however, that because several of the elements of Anthony's device and their various functions were old, Anthony's patent is of questionable validity. A valid patent may issue for a combination containing a new element. The new element introduced by Anthony, as disclosed by his specification, was his wire carrier, so formed as to provide its own spacers and adapted by its resiliency to be removable from the tray by a mere flexing of the wire. It is in the light of this fact that the claims of this patent must be read. And the conclusion is inescapable that the patent is of very limited scope.

Answering the second question, claims 2, 3, and 19 call for a carrier of "resilient wire" or "resilient material." It is contended that the strip metal carrier of appellant's index is resilient, and to demonstrate this carriers were plucked from the frame of appellant's index without first providing a space in which the carriers could be turned for disengagement from the guides, as taught by the Ring

394

ler patent and obviously suggested by the structure of the index. Clearly some resiliency was shown, but it was not the resiliency intended by the Anthony claims as read in the light of the specification. That the claims must be so read is conceded. As appellee states in his brief, "Every patent is its own dictionary." Appellant's carrier is so constructed that it would be seriously impaired by being repeatedly removed in the manner that the Anthony carrier is designed to be removed. While this difference in the manner of inserting and removing the carriers might not save appellant from the application of the doctrine of equivalents were the Anthony patent entitled to a wide range of equivalents, yet in this crowded art, and in the light of its history, we think the difference is sufficient to distinguish appellant's structure from Anthony's invention.

Claim 23 does not read upon appellant's index, being distinguished therefrom by the qualifying words, "said members (carriers) being individually removable from the frame without substantial movement lengthwise of the frame." That clause was inserted after rejection of the claim to avoid Mapes as a reference, and it therefore limits the claim to indexes of such structure that the carrier need not be shifted about in the tray or frame for removal or replacement, and appellant's index is therefore not responsive.

Appellant contends that claim 12 is invalid because of its uncertainty, and while much may be said on this subject we find it unnecessary to decide the question. The claim is clarified by reference to the specification and must be construed, to be held valid, so as not to read upon anticipating disclosures. Unless the terms of structure found in this claim are limited to the specific form disclosed, or colorable imitations thereof, the claim will be found to read on Wakefield. Thus limited, the claim cannot read on appellant's very different structure.

The decree of the District Court is reversed, with direction to dismiss the bill.